IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT JOE KIMBLE, ) | |
| ID # 1934929, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:16-CV-3428-G (BH) |
| ) | |
| E. BAKER, WARDEN, ) | Referred to U.S. Magistrate Judge |
|     Respondent, ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

### I. BACKGROUND

Robert Joe Kimble (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for aggravated assault with a deadly weapon. The respondent is E. Baker, Warden (Respondent).

**A.    State Court Proceedings**

The State indicted Petitioner for aggravated assault by striking the complainant with a hand, a tree branch, and pipe, which were deadly weapons, on October 8, 2013, in Cause No. F13-55104 in the 283rd Judicial District Court of Dallas County, Texas. (*See* doc. 17-3 at 8.)[1] He pleaded not guilty and was tried before a jury on May 19-21, 2014.

The complainant testified that she and Petitioner had been dating for three months when the

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

offense occurred. She went to see Petitioner at about 9:00 p.m. They went to his brother's apartment for dinner and then spent the evening together with a group of people at a neighbor's apartment. As one of the other couples prepared to leave, the man approached her and tried to kiss her on the mouth. She rejected his advance. Petitioner and the complainant left and walked toward her nearby condominium. As she reached to hold his hand, he hit her face with his fist. Then he grabbed her and repeatedly hit her face and head. She screamed for help, but no one responded. She lost consciousness, and when she regained it, Petitioner was holding her down with his foot and striking her arm with a pipe. She initially thought that he was hitting her with a tree branch, but when she saw pictures of the scene, she saw several rod-like pipes on the ground where she had been beaten. Eventually, Petitioner ran away.

The complainant and her daughter met with police and paramedics shortly after 4:00 a.m. Photographs taken by the officers showed an abrasion beneath her left eye and a large knot on her forehead above that eye. Her face was very swollen, and she had welts on her arm. At trial, she testified that during the police interview she denied losing consciousness because she did not want to worry her daughter any further.

After the police interview, at about 6:00 a.m., the complainant's daughter went to the scene of the offense and found the complainant's bracelet and earrings on the ground. There were three or four metal pipes on the ground. She took photographs of the area, including the jewelry, the pipes, and what she believed was blood on the ground. Those photographs were admitted into evidence. *See Kimble v. State*, No. 05-14-00724-CR, 2015 WL 3413549 at *1 (Tex. App. – Dallas May 28, 2015).

The jury convicted Petitioner of aggravated assault with a deadly weapon. The court

sentenced him to 25 years' imprisonment. (*See* doc. 17-3 at 51.)

The judgment was affirmed on appeal. *See Kimble*, 2015 WL 3413549. The Texas Court of Criminal Appeals denied the petition for discretionary review. *Kimble v. State*, PD-0819-15 (Tex. Crim. App. Nov. 4, 2015). Petitioner's state habeas application, signed on May 31, 2016, and received by the court on June 10, 2016, was denied without written order. (*See* docs. 17-1 at 6, ; 17-15); *see Ex parte Kimble*, WR-85,550-01 (Tex. Crim. App. Aug. 24, 2016).

**B.     Substantive Claims**

Petitioner's habeas petition, received on December 15, 2016, raises the following grounds:

(1) Counsel was ineffective for failing to:

    (a) raise self-defense and inform the jury about his version of the facts;

    (b) seek affidavits;

    (c) obtain medical records;

    (d) obtain expert testimony;

    (e) obtain the arrest record;

    (f) interview the witness;

(2) The prosecutor committed misconduct by submitting evidence that was partly false, misleading the jury, and failing to retract perjured testimony;

(3) The admission of inflammatory and prejudicial evidence caused the jury to be biased; and

(4) The evidence was insufficient to prove that he used a deadly weapon.

(*See* doc. 3 at 7-8.) Respondent filed a response on May 17, 2017. (doc. 16.) Petitioner filed a reply on June 13, 2017. (doc. 18.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but

4

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the

5

*Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12

6

F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A. **Self-defense**

Petitioner asserts that counsel was ineffective for failing to raise self-defense and to present to the jury his version of the facts, which he had relayed to counsel.

When a defendant is charged with aggravated assault by using a deadly weapon to cause bodily injury, the self-defense statue for use of deadly force (Tex. Penal Code § 9.32(a)) applies. *See Ferrel v. State*, 55 S.W.3d 586, 591-92 (Tex. Crim. App. 2001). A deadly weapon is anything that in the manner of its use or intended use is capable of causing serious bodily injury or death. *See* Tex. Penal Code § 1.07(a)(17). Under § 9.32(a) of the Texas Penal Code, a person is justified in using deadly force against another if a reasonable person in the actor's situation would not have retreated, and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See Ferrel*, 55 S.W.3d at 591.

Petitioner asserts that the complainant was the aggressor, but he does not allege facts that show she used deadly force and that his use of deadly force was justified. He has not shown that there was evidence that counsel should have presented to show that he acted in self-defense by striking the complainant with a deadly weapon. He has not shown that the state court's rejection of this claim was unreasonable.

B. **Affidavits**

Petitioner contends that counsel failed to seek affidavits.

7

Counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *See Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Petitioner does not allege from whom counsel should have obtained affidavits. He does not identify the substance of any affidavits, or how they could have been used at trial. He is not entitled to relief on his conclusory claim. *See Miller*, 200 F.3d at 282; *Woods*, 870 F.2d at 288. He has not shown that the state court's rejection of this claim was unreasonable.

**C.  Medical Records**

Petitioner contends that counsel failed to obtain medical records, and that a lack of hospital records would have impeached the claimant's testimony.

The complainant testified that she went to a hospital. (*See* doc. 17-6 at 42.) There were no medical records introduced into evidence. Petitioner has not shown that she did not go to a hospital and that there were no hospital records. He has not alleged that there were any other medical records that counsel should have obtained, or how any medical records would have benefited him at trial. He has not shown that the state court's rejection of this claim was unreasonable.

**D.  Expert Witness**

Petitioner asserts that counsel failed to obtain expert testimony.

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir.

8

2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have testified, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id.*

Petitioner has not set out the content of the proposed testimony of any expert witness, and he has not shown that any expert testimony would have favorable. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

**D.     Arrest Record**

Petitioner contends that counsel failed to obtain the arrest record, which would have impeached the complainant's testimony that she was never with him after the assault.

The complainant testified that she did not live with him after the offense, but she did see him washing cars across the street from her home two days after the offense. (*See* doc. 17-6 at 58.) She testified on cross-examination that after Petitioner was arrested, she had three telephone conversations with him while he was in jail. (*See id.* at 85.) He does not allege how the arrest report would have impeached her testimony that she no longer lived with him, that she saw him two days after the offense, and that she had three conversations with him after he was arrest. He has not shown how the result of his trial would have been different had counsel obtained the arrest report. He has not shown that the state court's rejection of this claim was unreasonable.

**E.     Interview of Witness**

Petitioner contends that counsel failed to interview a witness. He does not identify any witness that counsel failed to interview. He does not allege what counsel would have discovered in an interview and how that would have assisted his defense at trial. He is not entitled to relief on

9

his conclusory claim. *See Miller*, 200 F.3d at 282; *Woods*, 870 F.2d at 288. He has not shown that the state court's rejection of this claim was unreasonable.

### IV. PROSECUTORIAL MISCONDUCT

Petitioner contends that the prosecutor submitted evidence that was partly false, misled the jury, and failed to retract perjured testimony.[1]

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was material. *Id.* at 271. A new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Id.*

Petitioner claims that a document entitled "Prosecution Report" was admitted into evidence, that it showed his previous arrests, including one for murder, and that he was never charged with murder. The record does not show that a "Prosecution Report" that listed Petitioner's previous arrests was admitted into evidence. (*See* docs. 17-7 at 44-95; 17-8) (exhibits). His claim is not supported by the record. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").

---

[1] Petitioner does not allege any prosecutorial misconduct other than the use of perjured testimony or evidence.

He also asserts that the complainant's statements in a "Domestic Violence Supplement" and "Patient Care Report" contained perjury that was not retracted by the prosecutor. The record does not include a "Domestic Violence Supplement," but a "Patient Care Report" was admitted into evidence. (*See* doc. 17-7 at 50.) It notes that the complainant stated that "her boyfriend punched her in the face." She testified that Petitioner hit her in the face with his fist. Petitioner does not identify any false statements in that document; nor has he shown that the statement in the report was false. The complainant also testified that she thought that she had been hit with a tree branch, but after reviewing photographs of the scene, she saw pipes that Petitioner may have used to strike her.

Inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531. Any inconsistencies in the complainant's testimony and in her prior statement do not show that the prosecutor knowingly used perjured testimony. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## V. INFLAMMATORY AND PREJUDICIAL EVIDENCE

Petitioner contends that inflammatory and prejudicial evidence caused the jury to be biased, and he refers to the "Patient Care Report," the "Prosecution Report," and photographs of the injuries and the alleged weapon (pipes). His claim is construed as a complaint about the admission of inflammatory and prejudicial evidence, since he does not allege that jurors were biased in any other way.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62,

11

67–68 (1991). The correctness of a state court's interpretation of state law is beyond the scope of federal habeas review. *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir.1992) ("errors of state law, including evidentiary errors, are not cognizable in habeas corpus"). "[A] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).

As discussed, the record does not show that a "Prosecution Report" was admitted into evidence, and Petitioner has not shown that the "Patient Care Report" contained perjured evidence.

"Under Texas law, photographs are admissible regardless of their inflammatory nature if they are competent, material, and relevant, and unless they are offered solely to inflame the minds of the jury." *Woods v. Johnson*, 75 F.3d 1017, 1038-39 (5th Cir. 1996). Photographs of the injuries and pipes illustrated and made more understandable the testimony about the extent of complainant's injuries and the nature of the weapons. Petitioner has not shown that their admission into evidence rendered his trial fundamentally unfair. *See id*. at 1039 (photographs of a deceased's injuries and the crime scene illustrated and made more understandable the extent of the injuries and the condition of the crime scene and did not render the trial fundamentally unfair). Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## V.  SUFFICIENCY OF EVIDENCE

Petitioner contends that the evidence was insufficient to prove that he committed the assault with a deadly weapon.

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that

12

the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

The state appellate court held that the evidence was sufficient to prove that Petitioner used a deadly weapon under the *Jackson v. Virginia* standard. A police officer and detective testified that a hand, a tree branch, and a pipe could be deadly weapons. Petitioner argued on appeal that the State did not prove how any of those three items were used as deadly weapons in this case. The court found:

> The State is not required to show that the use or intended use of the weapon actually causes death or serious bodily injury; instead, it must show that the weapon's "use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) .... To determine whether something is a deadly weapon, the jury may consider all the surrounding facts. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). The record indicates [the complainant] believed [Petitioner] was trying to kill her by repeatedly punching her in the head and face. The police photographs establish that she suffered from visible facial and head injuries as a result of those blows to the head. [She] also testified that more than a year after the assault, she still felt its effects in her jaw. ... We conclude the evidence supports a finding that [Petitioner's] use of his hand in this case was capable of

> causing serious bodily injury. Therefore, rational jurors could have concluded [Petitioner's] hand was used as a deadly weapon.
>
> [A]s to whether [Petitioner] used a tree branch or a pipe as a deadly weapon, [the complainant's] testimony and the police photographs of the injury to her arm support a similar finding. [She] stated she came to consciousness and was aware of [Petitioner] holding her down and striking her with something in his hand. She initially believed he was hitting her with a tree branch; when she saw her daughter's pictures of the scene of the assault, she believed he could have been swinging one of the metal rods, or pipes, seen in the photograph. The police photographs show a series of long, thin, raised welts running down [her] right arm. It is reasonable to infer that she was struck repeatedly with something long and thin and hard. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008) (even without description of weapon, injuries suffered by the victim can by themselves be sufficient basis for inferring deadly weapon was used); *see also Moore v. State*, 531 S.W.2d 140, 142 (Tex. Crim. App. 1976) (use of deadly weapon can be proved by circumstantial evidence). We conclude the evidence supports a finding that [Petitioner's] use of a branch or a pipe in this case could have caused serious bodily injury. Rational jurors could have concluded one of those items was used as a deadly weapon.

*Kimble*, 2015 WL 3413549 at *2. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 10th day of September, 2018.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE